**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ADAM TRAVEL SERVICES, INC. a Massachusetts Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:26-cv-01225 |
| v. | ) ) | |
| ADAM VACATION PARTNERS, general partnership; and NICHOLAS HESTER, individually, | ) ) ) ) | Judge John Robert Blakey |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAIINTIFF'S MOTION FOR DEFAULT JUDGMENT**

**NOW COMES** Plaintiff Adam Travel Services, Inc. ("Plaintiff" or "ATS"), by and

through its counsel, Atom Law Group, LLC, and submits the following memorandum in support

of its Motion for Default Judgment under Fed. R. Civ. P. 55 against Adam Vacation Partners

("AVP"), and Nicholas Hester ("Hester") (collectively, the "Defendants"), jointly and severally,

who have not been dismissed, in this action. In support thereof, Plaintiff states as follows:

**STATEMENT OF FACTS**

Plaintiff is a Massachusetts corporation, engaged in the business of providing travel

services, with its principal place of business in Illinois. Dkt. 1, ¶ 14. Plaintiff was formed on

November 27, 1996, and has been using the mark, "ADAM VACATIONS", for at least the past

nine years. *Id*., ¶ 15. Not only does Plaintiff use the mark "ADAM VACATIONS", but it has

also created a suite of trademarks it uses to promote its services. *Id*., ¶ 16. Plaintiff advertises and

uses its trademarks in physical and online advertisements and expends significant sums of money

to promote and advertise its business under its trademarks. *Id*., ¶ 17-18.

1

Although Plaintiff owns four different trademarks, through separate entities, there is only one mark at issue in this matter. *See id.*, ¶ 10. Plaintiff owns United States Trademark Registration No. 6,323,080 on the Principal Register for the word mark "Adam Vacations" ("Mark") for "Arranging of transportation for travel tours; Travel booking agencies". (See trademark registration, attached as **Exhibit A**). *Id.*, ¶ 11 The priority date of this registration is January 1, 2016, and Plaintiff has continuously used this Mark since at least January 1, 2016. *Id.*, ¶ 11-12.  On April 13, 2021, Plaintiff's Mark was registered to the Principal Register. *Id.*, ¶ 13.

Defendant AVP is a general partnership between Nicholas Hester, Kritik Kumar, and Braun Kumar. *Id.*, ¶ 4. Defendant Nicholas Hester is an individual who resides in the City of Chicago in Cook County, Illinois. *Id.*, ¶ 3. Upon information and belief, Defendant Hester is an equal partner with Kritik Kumar and Braun Kumar and is individually, jointly, and severally liable as equal partners under the general partnership of AVP. *Id.*, ¶ 27.

As alleged in the Verified Complaint, Defendants advertise, promote, sell, and offer to provide travel-related services using Plaintiff's Mark. *Id.*, ¶ 20. Defendants advertise and promote their company on various web pages, where they repeatedly use Plaintiff's Mark "Adam Vacations". *Id.*, ¶ 24. Defendants also maintain the websites, https://www.adamvacations.com/ and us.adamvacations.com, where it markets, offers and sells its travel-related services, directly competing with Plaintiff. *See* i*d.*, ¶¶ 22, 26.

Defendants are not authorized to sue Plaintiff's Mark, and Defendant AVP continues to run the infringing websites. *See id.*, ¶ 31. Defendants have full knowledge of Plaintiff's Mark and continue to market its products as if they were affiliated with Plaintiff. *Id.*, ¶ 33. On or about June 6, 2023, Plaintiff licensed AVP to use its trademark as part of the Joint Business Agreement. *Id.*, ¶ 28. In this Agreement, Defendants were permitted to use Plaintiff's Airline

Reporting Corporation (ARC) accreditation, Ticketing System, and name in exchange for issuing all its tickets exclusively through Plaintiff's system and adhering to the rules and regulations in place. *See id*. Defendants breached this Agreement by repeatedly violating airline rules and regulations, as laid out in the Agreement. *Id*., ¶ 29. After Defendants' breach, Plaintiff revoked the license to use its name and trademarks. *Id*., ¶ 30. However, Defendants continue to deliberately, willfully, and wantonly use the Plaintiff's Mark. *Id*., ¶ 32.

## ARGUMENT

### I.      Jurisdiction And Venue Are Proper in This Court.

The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. § 1338(a) and (b). This Court further has jurisdiction over the Illinois state law claims in this action pursuant to 28 U.S.C. § 1367(a) as the state law claims are related to the federal claims, as they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because Defendants are non-residents of the United States that may be sued in any judicial district as Defendants reached out to do business in Illinois by operating their website and third-party websites through which Illinois and United States residents can inquire and purchase their counterfeit products. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-424 (7th Cir. 2010).

### II.     Plaintiff Has Met the Requirements for Entry of Default.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R Civ. P. 55(a). On February 3, 2026, Plaintiff filed its Verified Complaint against Defendants. Defendant AVP and Defendant Hester were both successfully served on February 7, 2026. Dkt. 10; 11. Despite having been served with process, the

3

Defendants have ignored these proceedings and failed to plead or otherwise defend this action. On May 5, 2026, the Clerk of the Court entered Defendants in default. Dkt. 16.

### III.  Plaintiff Has Met the Requirements for Entry of Default Judgment.

The Court may render a default judgment against a party who had not filed a responsive pleading or otherwise defended the suit. Fed. R. Civ. P. 55(b)(2). Upon the clerk's entry of default, a party may proceed to seek default judgment under Rule 55. A default judgment "establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint." *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). The decision to enter default judgment lies within the discretion of the district court. *Envirogen Techs., Inc. v. Maxim Constr. Corp., Inc.*, 14 C 2090, 2016 WL 5720380, at *1 (N.D. Ill. Sept. 30, 2016). When the Court determines that a defendant is in default, "the well-pleaded allegations of a complaint relating to liability are taken as true." *Coast to Coast Claim Services, Inc. v. Yagelski*, 21 C 04641, 2022 WL 16573461, at *1 (N.D. Ill. Oct. 31, 2022); *see also Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Further, the factual allegations in the complaint are not subject to challenge. *U.S. Bank Nat'l Ass'n v. Silver*, 11-CV-6332, 2013 WL 6353727, at *2 (N.D. Ill. Dec. 4, 2013); *see also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

Here, Plaintiff meets the procedural requirements for obtaining entry of default judgment. All Defendants have not challenged Plaintiff's pleadings by filing a motion pursuant to Fed. R. Civ. P. 12(b) or 56 nor have Defendants filed an answer to the Verified Complaint within 21 days of being served pursuant to Fed. R. Civ. P. 12(a). Thus, default judgment is appropriate.

Plaintiff requests an award of damages as authorized by 15 U.S.C. § 1117(c)(1) for willful trademark counterfeiting against the Defendants, jointly and severally, in the amount of

$2,000,000 for the unauthorized use of Plaintiff's Mark on websites hosted and created by Defendants that advertise, market, promote, and offer the same travel services Plaintiff markets and sells. Plaintiff also seeks entry of a permanent injunction prohibiting Defendants from advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any goods or services in conjunction with Plaintiff's Marks.

a. Count I - 15 U.S.C. § 1114 -Federal Trademark Infringement and Counterfeiting

Under the Lanham Act, a defendant is liable for trademark infringement and counterfeiting if it, "without the consent of the registrant, use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale…of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." *Entertainment One UK Ltd. v. 2021Shiliang*, 384 F. Supp. 3d 941, 948 (N.D. Ill. 2019); 15 U.S.C. § 1114(1). To prevail on a claim for trademark infringement and counterfeiting under the Lanham Act, Plaintiff must show that the Defendants' use of a protectable mark "is likely to cause confusion among consumers." *Id.*, at 949. Plaintiff must also plead allegations that make it plausible that likelihood of confusion exists but need not prove likelihood of confusion at this stage of the litigation. *See Fortress Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014); *Top Tobacco v. Fantasia Distribution Inc.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015).

Here, Plaintiff demonstrates that its trademarks are protectable as they are registered with the USPTO. *See* Dkt. 1, ¶¶ 10–12. More importantly, the trademark at issue, "Adam Vacations" has been used in commerce since at least January 1, 2016. *Id.*, ¶ 12. The Plaintiff's Mark has also been registered on the Principal Register since April 13, 2021. *Id.*, ¶ 13. "Registration of a mark in the Principal Register is 'prima facie evidence of the validity of the registered mark.'" *Entm't*

*One UK Ltd*, 384 F. Supp. 3d at 949 (citing 15 U.S.C. § 1057(b)). Therefore, it should be uncontested that Plaintiff has a valid, protectable mark.

Not only is Plaintiff's mark a protected registered mark, but Defendants' use of Plaintiff's Marks is also likely to cause confusion in the marketplace. *See* Dkt. 1, ¶ 41. Plaintiff also alleges that Defendants use and continued use of Plaintiff's registered Mark, without Plaintiff's authorization and such adoption of Plaintiff's Marks was done willfully and with wanton disregard. *Id*. at ¶ 43. Since the Defendants have failed to respond or otherwise plead in this matter, the Court must accept the allegations contained in the Verified Complaint as true. Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiff is entitled to default judgment on Count I of the its Verified Complaint for trademark infringement and counterfeiting.

b. <u>Count II – Unfair Competition, False Designation of Origin, Passing Off by Defendants – 15 U.S.C. § 1125(a)</u>

Under the Lanham Act, "a person may not use a 'false designation of origin, false or misleading description of fact, or false or misleading representation of fact' in connection with any goods or services.'" *Slep-Tone Entertainment Corporation v. Sellis Enterprises, Inc.*, 87 F. Supp. 3d 897, 904 (N.D. Ill. 2015) (citing 15 U.S.C. § 1125(a)). To state a claim under 15 U.S.C. §1125(a), a plaintiff must allege that (1) the mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 674 (7th Cir. 2001). "[C]laims proceeding under theories of 'false designation of origin' and 'unfair competition' mirror those for a trademark infringement claim. *Long Grove Investments, LLC v. Baldi Candy Co.*, 397 F. Supp. 3d 1190, 1197 (N.D. Ill. 2019).

Similar to Count I, Plaintiff here demonstrates that its Mark is protectable as it is registered with the USPTO and has been used in commerce since at least 2016. Dkt. 1, ¶ 12.

Plaintiff further alleges in its Verified Complaint that Defendants' have adopted Plaintiff's Mark to promote its airline travel services. *Id*. at ¶ 46. Therefore, the Defendants' unauthorized use of Plaintiff's Marks is likely to cause confusion, mistake or deceive customers as to Plaintiff's affiliation, connection, association, sponsorship, or approval of Defendants' goods. *Id*. at ¶ 49. By using Plaintiff's Marks, without authorization, Defendants' use and continued use of Plaintiff's Mark is willful, wanton, and shows a reckless disregard for Plaintiff's rights while designed specifically to trade upon the consumer goodwill enjoyed by Plaintiff. *Id*. at ¶ 52. As such, Plaintiff requests entry of judgment with respect to Count II of its Verified Complaint.

    c.  <u>Count III – Federal Trademark Dilution – 15 U.S.C. § 1125(c)</u>

The Lanham Act also provides that "the owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1). Dilution is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods and services." 15 U.S.C. § 1127. Courts recognize two forms of dilution: tarnishing and blurring. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000).

Dilution by blurring, the injury at issue here, occurs when consumers "see the plaintiff's mark used on a plethora of different goods and services…raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Id*. To prevail on a trademark dilution claim, Plaintiff must show: (1) its marks are famous; (2) Defendants adopted their mark after Plaintiff's marks became famous; (3) Defendants' mark is likely to cause dilution of Plaintiff's marks; and (4) Defendants are using its mark in commerce for commercial

purposes. *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 784-85 (N.D. Ill. 2011).

Plaintiff has been using its Mark for at least the past nine years. Dkt. 1, ¶ 15. Under a trademark dilution claim, the harm is not based on consumer confusion as a claim may still arise even if consumers have not been confused. *See Facebook, Inc.*, 819 F. Supp. 2d at 785. Instead, it "stems from a trademark losing its ability to trigger an association in consumer's minds between the trademark and a particular producer of goods or services." *Id*. Similarly, this case involves Defendants' commercial use of Plaintiff's Mark that dilutes and is likely to dilute the distinctiveness of Plaintiff's Mark by eroding the public's exclusive identification of these famous marks with Plaintiff's goods. Dkt. 1, ¶ 57.

Plaintiff's use of its trademarks in commerce pre-dates Defendants' adoption and use of the marks, and Defendants' unlawful use of the marks in commerce began long after Plaintiff's Marks became famous. *Id*. at ¶ 58-59. Defendants' continued act of intentional, willful, and malicious dilution of Plaintiff's Marks will continue to cause injury to Plaintiff in the form of lost sales and revenue, lost business reputation, and consumer confusion. *See id*. at ¶ 60-62. Therefore, Plaintiff is also entitled to default judgment on Count III of its Verified Complaint.

    d.  <u>Count IV – Deceptive Trade Practices Pursuant to the Illinois Uniform Deceptive Trade Practices Act – 815 ILCS § 510/1, *et seq*.</u>

"Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade Practices Act also forms the basis for plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes. To state a cause of action under the Illinois Uniform Deceptive Trade Practices Act (UDTPA), a plaintiff must establish the same elements required for a Lanham Act claim. *Holbrook Mfg LLC v. Rhyno Mfg. Inc.*, 497 F. Supp. 3d 319, 332 (N.D. Ill. 2020). Therefore, to state a claim under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), Plaintiff must show that (1) it has a protectable trademark; and (2) that the

Defendants' use of the trademark is likely to cause confusion among consumers. *Id*.

Here, Plaintiff sufficiently alleges that the Defendants have knowingly and willfully engaged in deceptive trade practices under the UDTPA by causing likelihood of confusion or misunderstanding as to the source, origin, or sponsorship of the parties' respective products. Dkt. 1, ¶ 66. Plaintiff also establishes in its Verified Complaint that it has protectable trademarks. Thus, Plaintiff requests entry of judgment with respect to Count IV of its Verified Complaint.

e. Count V – State Dilution Pursuant to the Trademark Registration and Protection Act – 765 ILCS § 1036/65

Under Illinois law, the owner of a mark which is famous in Illinois is entitled to relief "against another person's commercial use of a mark or tradename, if the use . . . causes dilution of the distinctive quality of the mark." 765 ILCS 1036/65(a). "Dilution of a trademark's distinctiveness generally occurs when consumers are led to mistakenly associate the plaintiff's famous mark with the defendant's inferior product or service, or when a famous mark appears on different goods and services and therefore no longer serves as a unique identifier of the plaintiff's product or service." *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1100 (N.D. Ill. 2016). To succeed on a trademark dilution claim, "proof of actual dilution is required, either through survey, financial, or circumstantial evidence." *Id*.

Plaintiff has been using its famous Mark in commerce within the State of Illinois prior to the Defendants' use of the mark. See Dkt. 1, ¶ 70. Defendants' use of Plaintiff's Mark began after Plaintiff's mark became famous and distinctive. *Id.*, ¶ 71. Circumstantial evidence of actual dilution can be inferred as the Defendants willfully used Plaintiff's Mark to trade on the goodwill associated with Plaintiff's Mark, or to cause dilution of the Mark. *Id*. at ¶ 73.

Defendants' use of Plaintiff's Mark in commerce is likely to dilute the distinctiveness of Plaintiff's Mark by eroding the public's exclusive identification of these famous marks with

Plaintiff's goods, while simultaneously tarnishing and degrading the positive associations and prestigious connotations of the marks and otherwise lessening the capacity of the marks to identify and distinguish goods. Id. ¶ 72. As such, Plaintiff requests entry of default judgment under Count V of the Verified Complaint.

    f.   <u>Count VI – State Trademark Infringement Pursuant to Illinois Common Law</u>

To prevail on a trademark infringement claim under Illinois common law, the plaintiff must show that (1) it has a protectable ownership interest in the mark, and (2) the defendant's use of the mark is likely to cause consumer confusion. *Poneman v. Nike, Inc.*, 161 F. Supp. 3d 619, 631 (N.D. Ill. 2016). The elements under Illinois common law are the same as the claim under federal trademark infringement pursuant to 15 U.S.C. § 1125(a). *Id.*

As demonstrated above, Plaintiff sufficiently alleges that it has a protectable interest in its trademarks as they are registered with the USPTO and Plaintiff's use of the Mark predates any alleged use by Defendants in the United States. *See* Dkt. 1, ¶ 10-13, 78. Registration of a mark in the Principal Registration is "prima facie evidence of the validity…of the owner's exclusive right to use the registered mark in commerce or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b). Additionally, Plaintiff sufficiently alleges that the trademark infringement has caused injury to Plaintiff in the form of lost sales and revenue, lost business reputation and consumer confusion. Dkt. 1, ¶ 81. Therefore, Plaintiff is entitled to default judgment on Count VI of its Verified Complaint as well.

    g.   <u>Count VII - Unfair Competition Pursuant to Illinois Common Law</u>

The elements for an unfair competition claim under state law mirror those of the federal statutory trademark infringement claim as the state unfair competition claim is analyzed under the likelihood of confusion standard. *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp.3d 1005,

1012 (N.D. Ill. 2014). Therefore, to state a claim for unfair competition under Illinois common law, the plaintiff must allege that (1) it has a protectable right in the trademarks, and (2) the defendant's use of the mark is likely to cause confusion. *Id.* at 1012. In this matter, Plaintiff sufficiently pleads all the elements for unfair competition as it falls under the same elements for trademark infringement. Accordingly, Plaintiff requests entry of judgment with respect to Count VII of the Verified Complaint.

     h.   <u>Count VIII - Unjust Enrichment Pursuant to Illinois Common Law</u>

Under Illinois law, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). If the basis for the unjust enrichment claim falls on the same wrongdoing alleged in another claim, the claim for unjust enrichment will fail or succeed with the related claim. *Id.*, at 517.

In the matter at hand, Plaintiff sufficiently pleads that Defendants gained financial benefit due to their unauthorized use of Plaintiff's Marks. *See* Dkt. 1, ¶ 93. Thus, the basis for Plaintiff's claim for unjust enrichment falls on the trademarking and counterfeiting claim alleged against Defendants under Count I of its Verified Complaint. As illustrated above, Plaintiff sufficiently pleads facts showing it is entitled to default judgment under Count I. Appropriately, if judgment is granted under Count I, default judgment should be entered against Defendants for unjust enrichment under Count VIII of the Verified Complaint.

**IV.**    **Plaintiff is Entitled to a Permanent Injunction, Statutory Damages and Attorney's Fees**

As shown above, Defendants intentionally and willfully distributed, offered for sale, and provided products bearing Plaintiff's Mark. Accordingly, the three questions that remain for this

Court are: (1) what injunctive relief is appropriate; (2) the damages to be awarded against the Defendants; and (3) whether Plaintiff should be awarded attorney's fees.

a.  A Permanent Injunction is Appropriate

The Lanham Act grants district courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . to prevent a violation of subsections (a), (c), or (d) of 15 U.S.C. § 1125." 15 U.S.C. § 1116(a). "A plaintiff seeking a permanent injunction must show that: (1) it has suffered an irreparable injury; (2) legal remedies, cannot adequately compensate for that injury; (3) the balance of hardships between the parties warrants an equitable remedy; and (4) a permanent injunction would not harm the public interest." *Entertainment One UK Ltd.*, 384 F. Supp. 3d at 955.

"The first two requirements, irreparable harm and inadequate remedy at law, are presumed in trademarking infringement cases." *Id*. Further, it has been recognized that "damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982). Irreparable injury is found in part due to the fact that "[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods." *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

The balance of hardships also favors Plaintiff as Defendants have no legitimate interest in selling services associated with Plaintiff's Mark. Instead, Plaintiff's goodwill and reputation continues to suffer as Defendants use Plaintiff's mark without authorization. *See Bulgari, S.P.A. v. Zou Xiaohong*, 2015 WL 6083202, at *3 (N.D. Ill. 2005). Lastly, a permanent injunction would serve the public interest, as it would not only eliminate potential consumer confusion, but

there is also no harm to Defendant to being enjoined from violating the law. *See Entm't One UK Ltd.*, 384 F. Supp. 3d 9 at 955. By failing to respond to the Verified Complaint, Defendants concede that they have offered services using Plaintiff's Mark, without Plaintiff's authorization, and the resulting harm to Plaintiff's brand and reputation cannot be fully compensated by the statutory damages award. *See Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424,432 (7th Cir. 2001).

Defendants' willful and continued use of Plaintiff's Mark creates a likelihood of confusion in the marketplace, which will only continue and increase if Defendants are permitted to continue their unauthorized use and misappropriation of Plaintiff's Marks. Dkt. 1, ¶ 41. Given that the Defendants' conduct was willful, and that they have failed to respond to Plaintiff's Verified Complaint, Plaintiff requests that this Court grant Plaintiff a permanent injunction against the Defendants. *See Monster Energy Company v. Jing*, 2015 WL 4081288, at *4 (N.D. Ill. 2015). In particular, Plaintiff requests that this Court enjoin Defendants from advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any goods or services in conjunction with Plaintiff's Mark or any other mark or design elements substantially similar of confusing to Plaintiff's Mark.

b. <u>Statutory Damages Against Defendants for Trademark Counterfeiting is Appropriate</u>

Before final judgment is entered, the Lanham Act allows the plaintiff to elect one of two remedial options for trademark infringement: (1) the actual damages caused by the infringement pursuant to 15 U.S.C. § 1117(a) or (2) statutory damages pursuant to 15 U.S.C. § 1117(c). Generally, courts will find statutory damages appropriate in default judgment cases as the information necessary to prove actual damages is within the infringers' control and is not disclosed. *Deckers Outdoor Corp. v. Does 1-55*, 2011 WL 4929036, at *4 (N.D. Ill. 2011). Generally, statutory damages are awarded for "not less than $1,000 or more than $200,000 per

counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1).

Statutory damages may be awarded a higher amount "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed. . ." 15 U.S.C. § 1117(c)(2). This Court may find that the Defendants' actions amount to willful trademark infringement when they have knowledge that their conduct constituted trademark infringement or where they show a reckless disregard for the Plaintiff's rights. *See Luxottica Grp. S.p.A. v. Li Chen*, 2017 WL 836228, at *2 (N.D. Ill. 2017). The Defendants' knowledge does not have to be proven directly but can be inferred from their conduct. *See id*.

The Verified Complaint demonstrates that Defendants are willfully and intentionally using Plaintiff's Mark and marketing their products as if affiliated with Plaintiff. Dkt. 1, ¶ 32-33. The acts by Defendants affirm their knowledge of their infringing activities and their disregard of Plaintiff's rights: Defendants' use of Plaintiff's Mark on various websites. *See id*, ¶ 22. It can be inferred from Defendants' conduct that they willfully infringed on Plaintiff's trademark rights. *See Luxottica Grp. S.p.A.*, 2017 WL 836228, at *2. As a result of their default, Defendants admit they had knowledge of Plaintiff's trademark rights but still continued on with their willful and deliberate use of Plaintiff's Marks. Dkt. 1, ¶ 32. Based on these considerations, Plaintiff requests that this Court award statutory damages in the amount of $2,000,000 for the counterfeit mark infringed pursuant to 15 U.S.C. § 1117(c)(2) for willful conduct.

As § 1117(c) does not provide guidance on how to select a damage figure within the range set out in this section, the Seventh Circuit has previously held that a court awarding statutory damages is "not required to follow any rigid formula but instead enjoys wide

discretion." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). Statutory damages under the Lanham Act serve two purposes, to provide a remedy to the victim but also intended to protect an important public interest. *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994). Therefore, an award of statutory damages must ensure that the wrongdoing party will not engage in further infringing activities. *Id*.

The statute permits a maximum recovery of up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed when the defendant's conduct amounts to willful behavior. Here, the Verified Complaint reveals that Defendants infringed on one of Plaintiff's Mark (Registration no. 6,323,080), with images of Defendants' infringing uses. Dkt. 1, ¶ 24. As stated above, by virtue of Defendants' failure to respond or otherwise plead, Defendants admit that their actions constitute willful behavior as they had actual and constructive knowledge of their infringing conduct. Therefore, the Court should find that Plaintiff's requested statutory damage award of $2,000,000 for the counterfeit mark is just.

    c.  <u>Attorney's Fees</u>

Plaintiff seeks to recover attorney's fees and costs pursuant to 15 U.S.C. § 1117(a). However, pursuant to the Northern District of Illinois Local Rule 54.3, Plaintiff reserves its right to seek attorney's fees and costs as a motion for an award of attorney's fees and costs.

## V. CONCLUSION

Therefore, Plaintiff respectfully requests that this Court grant this Motion for Default Judgment, issue judgment against Defendants for all claims in its Verified Complaint, permanently enjoin Defendants from infringing Plaintiff's Marks consistent with the Proposed Order emailed to the Court; and award appropriate statutory damages for trademark counterfeiting.

Dated: July 21, 2026

Respectfully submitted,

**/s/ *Kennedy Snyder***
Kennedy Snyder (#6349995)
Atom Law Group, LLC
770 N. LaSalle Dr., Suite 700
Chicago, Illinois, 60654
(P) 312-493-8000
(F) 312-943-4984
ksnyder@atom.law

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

       I certify that on the 21st day of July, 2026, a copy of the foregoing document and all supporting documents was electronically filed via the Court's electronic filing system

         **/s/ _Kennedy Snyder_**
         Kennedy Snyder (#6349995)
         Atom Law Group, LLC
         770 N. LaSalle Dr., Suite 700
         Chicago, Illinois, 60654
         (P) 312-493-8000
         (F) 312-943-4984
         ksnyder@atom.law